DECISION AND JOURNAL ENTRY
{¶ 1} Appellants, Bruce and Denise Ritter ("Appellants"), appeal a decision of the Barberton Municipal Court which found for Appellee, Fairway Park Properties ("Fairway") in a landlord-tenant dispute. We affirm.
 I. {¶ 2} This is the second time this case has come before this court. In a previous opinion released on September 24, 2003, we declined to reach the merits of two of three assignments of error for lack of an App.R. 9(C) affirmation from the trial court accepting a statement of evidence in the absence of a record of the proceeding. On October 2, 2003, Appellants filed an App.R. 26 motion to reconsider our ruling because the trial court had accepted the statement of proceedings; this motion was granted on November 4, 2003, the prior decision was vacated, and the appeal was reinstated. On November 17, 2003, Appellants filed a notice of appeal with the Supreme Court of Ohio, and this Court stayed the appeal pending action by the high court. On March 3, 2004, the Supreme Court declined certiorari and on March 18, 2004, Appellants requested that we lift our stay; we did so on March 29, 2004, and now consider the case on the merits. The facts below are taken from the original opinion.
 {¶ 3} Appellants leased an apartment from Fairway subject to a written lease agreement. The lease stated:
"12. CARPETING: The condition of carpeting at the time of move in is noted on the APARTMENT INSPECTION REPORT form. Landlord expects and demands that the carpeting shall be in the same condition at move out as it is at move in; normal wear and tear excepted. Carpet manufacturers recommend ordinary care, including regular weekly vacuuming and professional cleaning in the event carpeting is soiled or stained. The use of spot cleaners is not recommended as it may set the stains, alter the color of the fiber and may be harmful to carpet backing. RED STAINS DO NOT COME OUT. If Tenant has particular concerns regarding stains or spots, contact the Leasing Office for a recommended, professional cleaning service. Landlord professionally cleans carpeting at the time of vacancy and re-letting of the apartment. Tenant shall be responsible for the full cost of replacement for any carpeting irreparably damaged, stained or excessively worn due to improper or lack of ordinary care or maintenance by Tenant. Stains due to pet waste or urine shall necessitate replacement at Tenant's expense as stipulated in Pet Addendum." (Emphasis sic.)
 {¶ 4} After Appellants vacated the apartment, they filed suit in the Barberton Municipal Court to recover their $989.00 security deposit, the $200.00 pet deposit, interest, and attorney's fees. Fairway counterclaimed for $681.18 plus interest, alleging damages to the apartment inflicted by Appellants, which resulted in the need to replace all the carpeting and linoleum in the unit.
 {¶ 5} The case was tried to a magistrate. The magistrate found that the security deposit for the apartment was $989.00, the $200.00 pet fee was non-refundable, and that "[t]he replacement of the carpet in the apartment was reasonable and necessary under the circumstances, based upon the damage done to it by [Appellants]." In his conclusions of law, the magistrate stated that "[t]he [Appellants] caused damage to the apartment in excess of the security deposit held by [Fairway], and credits given by [Fairway], in the amount of $681.18."
 {¶ 6} Appellants filed a motion to set aside the magistrate's decision and enter judgment for Appellants. The trial court construed the motion to be an objection to the magistrate's decision in accordance with Civ.R. 53(D)(3). The trial court overruled the objection, adopted the magistrate's decision, and entered judgment for Fairway on Appellants' claim and Fairway's counterclaim. Appellants timely appealed, raising three assignments of error.
 II. Assignment of Error No. 1
"Whether a landlord in summit county, without attempting to have a rug carpet professionally cleaned, can simply take photographs allegedly showing brown and yellow stains on the rug carpet and spots on the vinyl carpet in certain rooms in the apartment, replace all the carpeting in the apartment, and bill the former tenant for the defficiency (sic) that is above the amount of security deposit." (sic.)
 {¶ 7} In this first assignment of error, Appellants argue that Fairway Park was required to itemize the deductions from the security deposit and was required to prove that the carpet was damaged beyond normal wear and tear. Appellants further argue that a provision in a lease agreement that requires payment for carpet cleaning is inconsistent with R.C. 5321.16(B) and is unenforceable; therefore, the "automatic replacement of carpeting on the basis of barely visible `brown' and `yellow' stains on the carpet is inconsistent with [R.C. 5321.16] and is therefore unenforceable."
 {¶ 8} When appealing the trial court's adoption of a magistrate's decision, any claim of trial court error must be based on the actions of the trial court, not on the magistrate's findings or proposed decision. Lewis v. Savoia (Aug. 28, 1996), 9th Dist. No 17614, quoting Mealey v. Mealey (May 8, 1996), 9th Dist. No 95CA0093, at 5. An appellate court determines whether a trial court abused its discretion by adopting a magistrate's report in light of the evidence before the trial court. AtcoMed. Prod., Inc. v. Stringer (Apr. 8, 1998), 9th Dist. No 18571, at 4. An abuse of discretion connotes more than an error in law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. State ex rel. Edwardsv. Toledo City School Dist. Bd. of Edn. (1995),72 Ohio St.3d 106, 107. When applying the abuse of discretion standard, a reviewing court may not substitute its judgment for that of the trial court. Pons v. Ohio State Med. Bd. (1993),66 Ohio St.3d 619, 621.
 {¶ 9} The trial court approved an App.R. 9(C) statement of the evidence which described testimony from Denise Ritter and her friends, Brandon and Roxanne Buil, and from Fairway employees Kelly Threadway and Valerie Mencer. Exhibits before the trial court included photographs of the carpet and linoleum submitted by both sides.
 {¶ 10} Denise Ritter testified that the carpet was not damaged, but needed only to be professionally cleaned, and she submitted photographs of various places in the apartment wherein no damage to the carpet was evident. Brandon and Roxanne Buil testified that they assisted Appellants when Appellants vacated the apartment and they saw no damage to carpets or linoleum.
 {¶ 11} Kelly Threadway testified that she photographed brown and yellow stains on the carpet in various places in the apartment, as well as gouges in the linoleum in the kitchen and foyer. Both Kelly Threadway and Valerie Mencer testified that Fairway does not attempt "to clean stains of certain colors (Red)" in carpeting because the stains do not come out. The parties also submitted Exhibit A, an inspection report indicating the condition of the unit at the time Appellants moved in and again when they vacated; Exhibit B, an itemized list of charges addressed to Appellants from Fairway; Exhibit 3, an invoice for the cost of replacing all the carpet; Exhibit 4, an invoice to replace linoleum in the foyer and kitchen; Exhibit 5, a "Report of Paid Amounts"; Exhibit 6, an invoice for cleaning the apartment; Exhibit 7, an invoice for painting and crayon removal; Exhibit 8, a second itemized list of damages to the apartment and the resultant charges.
 {¶ 12} We find that there was credible evidence to support the trial court's adoption of the magistrate's report. Furthermore, the language of the contract provided notice that certain stains are irreparable and their presence would result in replacement of the carpet. Appellants' argument that the damages are unenforceable under R.C. 5321.16(B) is without merit. Appellants rely upon Albreqt v. Chen (1983), 17 Ohio App.3d 79, for their authority; Albreqt disallowed a liquidated damages contract clause stating predetermined money damages independent of any actual damage to the rental unit. Such a liquidated damages clause is violative of R.C. 5321.16(B) which requires a list of actual damages. A contract clause stating that carpet which is damaged irreparably will be replaced at the renter's expense is not a liquidated damages clause. Moreover, Fairway did not violate R.C. 5321.16(B) in that Appellants received an itemized list of damages to the apartment. In light of all the evidence, we find no abuse of discretion on the part of the trial court.
 Assignment of Error No. 2
"Whether a landlord in summit county, with no expertise as a professional carpet cleaner, can legally have a policy that barely visible spots of certain colors, such as brown, yellow, and red, warrant replacement of rug carpeting in the entire tenancy without any attempt to have the rug carpeting professionally cleaned to determine whether the spots can be removed."
 {¶ 13} Appellants claim that Fairway had a duty to mitigate their damages and failed to do so when Fairway did not attempt to have the carpet professionally cleaned prior to replacement. Appellants claim that they did not damage the carpet beyond the normal wear and tear and a professional cleaning would have demonstrated that Appellants were entitled to the return of their security deposit.
 {¶ 14} "[A] party who has been wronged by a breach of contract may not unreasonably sit idly by and allow damages to accumulate." Calamari Perillo, The Law of Contracts (4 Ed. 1998) 562, Section 14.15. "`[L]andlords have a duty, as all parties to contracts do, to mitigate their damages caused by a breach.'" Frenchtown Square Partnership v. Lemstone, Inc.,99 Ohio St.3d 254, 2003-Ohio-3648, at ¶ 15 (emphasis omitted), quoting Dennis v. Morgan (2000), 89 Ohio St.3d 417, 417. "As in other types of contracts, the duty to mitigate stems from the implied covenant of good faith and fair dealings." New TowneLtd. Pshp. v. Pier 1 Imports (1996), 113 Ohio App.3d 104, 108. Parties of equal bargaining power are free to enter into any agreement the terms of which are enforceable at law. Id., citingGugle v. Loeser (1944), 143 Ohio St. 362, 55 N.E.2d 580; see, also, Chickerneo v. Society National Bank (1979),58 Ohio St.2d 315, 320, 390 N.E.2d 1183. A rental agreement may include any terms which are not inconsistent with, or prohibited by, law or against public policy. New Towne Ltd. Pshp.,113 Ohio App.3d at 108.
 {¶ 15} It is black letter law that when a contract is breached, the wronged party must mitigate any resultant damages. However, in this case, Fairway is not claiming a breach of contract, but is enforcing the contract damages upon the lease's terms. Nonetheless, the lease contains a provision which specifically annuls any duty to mitigate; the lease states that red stains are irreparable and irreparable damage will result in the carpet being replaced. Appellants' second assignment of error is overruled.
 Assignment of Error No. 3
"Whether a pet deposit that is labeled as a nonreturnable `pet fee,' which is paid in addition to a monthly `pet fee,' is a security deposit as a matter of law."
 {¶ 16} Appellant argues in this assignment of error that "the pet addendum executed by [Appellants] was clearly intended to secure the performance of their obligation not to allow their cat to damage Defendant's property." Therefore, Appellants claim that the pet deposit is a security deposit pursuant to R.C. 5321.01(E) and refundable pursuant to R.C. 5321.16(B).
 {¶ 17} Traditional contract principles apply when a court interprets rental agreement provisions. Pool v. InsigniaResidential Group (1999), 136 Ohio App.3d 266, 270. If a contract is clear and unambiguous, its interpretation is a question of law. Red Head Brass, Inc. v. Buckeye Union Ins. Co.
(1999), 135 Ohio App.3d 616, 627; Beaver Excavating Co. v.United States Fid. Guar. Co. (1998), 126 Ohio App.3d 9, 14.
 {¶ 18} In interpreting rental agreements, as with other written contracts, we look to the terms of the lease to determine the intention of the parties. See Minor v. Allstate Ins. Co.,Inc. (1996), 111 Ohio App.3d 16, 20. The intent of the parties to a lease is "presumed to reside in the language they chose to employ in the agreement." Fleming v. Rusch Properties (Mar. 1, 2001), 10th Dist. No. 00AP-595, citing Skivolocki v. East OhioGas Co. (1974), 38 Ohio St.2d 244, paragraph one of the syllabus.
 {¶ 19} R.C. 5321.01(E) defines a security deposit as "any deposit of money or property to secure performance by the tenant under a rental agreement."
 {¶ 20} R.C. 5321.16(B) requires that security deposits may be applied to past due rent or damages, however the landlord must provide a written notice to the tenant of what rent or damage was deducted from the security deposit. If a landlord does not comply with R.C. 5321.16(B), then the tenant may recover the security deposit due him, along with damages in an amount equal to the amount wrongfully withheld, and reasonable attorney's fees.
 {¶ 21} The "pet addendum" to the lease in issue states:
"Tenant shall pay Landlord a non-refundable Pet Fee of $200.00 at move-in or upon commencement of this agreement. This fee shall not in anyway (sic) be applied to damages at time of move-out."
 {¶ 22} Where a pet deposit is given to secure performance by the tenant under the lease, it may be considered a security deposit subject to the provisions of R.C. Chapter 5321 and applicable case law. Pool v. Insignia Residential Group,
136 Ohio App.3d, at the syllabus.
 {¶ 23} The language of the addendum states that it is non-refundable and inapplicable to damages. Appellants present no argument or evidence to support the conclusory statement that the parties "clearly intended to secure the performance of their obligation not to allow their cat to damage Defendant's property." The plain language of the rental contract indicates that the pet deposit was not to be applied to damages, and so it cannot be intended to secure performance to keep the apartment free from damage. Appellant's third assignment of error is overruled.
 III. {¶ 24} Appellants' three assignments of error are overruled. The judgment of the Barberton Municipal Court of Summit County is affirmed.
Judgment affirmed.
Whitmore, J., Batchelder, J., concur.