OPINION
Plaintiff-appellant/cross-appellee Lisa Kainrad (Lisa) and defendant-appellee/cross-appellant Christian Kainrad (Chris) appeal the Portage County Domestic Relations Court's division of property in their divorce case. Judge Joseph Kainrad (Joseph), Chris' father, is the third party defendant-appellee. This court is asked to determine if the trial court abused its discretion in dividing the property. For the reasons discussed below, the decision of the trial court is modified in part and affirmed.
 FACTS
Chris and Lisa were married on May 19, 1985. Two children were born as issue of this marriage. After they were married, Chris started an excavation business. Joseph, Chris' father, bought equipment for the excavation business. Joseph agreed to rent this equipment to Chris by the hour. The agreement provided that once Chris had paid Joseph rent in the amount of the cost of the equipment Chris would own the equipment outright. Chris paid some rent on the equipment, however, he did not pay the full amount owing.
During the marriage, Chris and Lisa rented a house from Joseph and his wife. After awhile, Joseph and his wife agreed to sell the house to Chris and Lisa. It is disputed whether the house was sold to them for $30,000 or $75,000. Chris and Lisa executed a mortgage on the property for $65,000. They paid off debts and then paid $30,000 to Joseph. Joseph and Chris insist that Joseph gifted $25,000 to Chris for partial payment on the house. Chris then executed a note to Joseph for the remaining $20,000.
Lisa filed for divorce on January 25, 1999. On August 29, 2000, Joseph filed a motion to intervene and the motion was granted. Joseph filed the motion to intervene to protect his interest in the property he sold to Chris and Lisa. Foreclosure was threatened on the property and he had not received the remainder of the payments on the house and the equipment.
The trial court granted a divorce based on incompatibility and Lisa was named the residential parent. The court also ruled that the house was sold to Chris and Lisa for $75,000, of which $25,000 was a gift to Chris; $30,000 was repaid to Joseph by Chris and Lisa; and $20,000 still remained due and payable to Joseph as evidenced by the promissory note executed by Chris in that amount. Said $20,000 note, combined with other notes advanced to Chris for the benefit of Chris and Lisa amounted to $40,533. The trial court ruled that this amount was marital debt. The amount owed for the machinery bought by Joseph but never paid for was also considered marital debt. However, the trial court offset this amount by the improvements that Lisa's father and brother made to the marital residence. Improvements made on the house during the marriage amounted to anywhere between $30,000 to $75,000. This timely appeal and cross appeal followed.
 STANDARD OF REVIEW
When reviewing a property division award, the standard of review for this court is abuse of discretion. Blakemore v. Blakemore (1983),5 Ohio St.3d 217. "An abuse of discretion involves more than an error of judgment; it implies that the domestic relations court's attitude was unreasonable, arbitrary or unconscionable." Id. at 219. A trial court may exercise broad discretion in arriving at an equitable property division.Id.; Kunkle v. Kunkle (1990), 51 Ohio St.3d 64. When applying the abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court but must be guided by a presumption that the findings of the trial court are correct. In reJane Doe 1 (1991), 57 Ohio St.3d 135.
 ASSIGNMENT OF ERROR NO. ONE
Lisa raises five assignments of error. Chris raises two cross-assignments of error. The first assignment of error contends:
 "THE TRIAL COURT ABUSED ITS DISCRETION AND DECIDED AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND AGAINST PUBLIC POLICY WHEN IT MADE A FINDING OF FACT THAT THE SALE PRICE OF THE HOME WAS $75,000 AS THAT FINDING IS UNSUPPORTED BY THE EVIDENCE AND A FINDING OF A SALE PRICE OF $75,000 REQUIRES THE COURT TO LEGITIMIZE THE CONDUCT OF THE APPELLEE AND/OR THIRD PARTY DEFENDANT IN MISLEADING THE BANK, MISLEADING THE COUNTY RECORDER'S OFFICE, VALIDATING A FAILURE TO PAY PROPER TRANSFER TAXES TO THE COUNTY, AND VALIDATING A FAILURE TO MAKE PROPER DISCLOSURE TO THE IRS."
The findings of the trial court are reviewed to determine whether they are supported by competent credible evidence. Seasons Coal Co. v.Cleveland (1984), 10 Ohio St.3d 77; Barkley v. Barkley (1997),119 Ohio App.3d 155, 159. Assessing the credibility of witnesses is a matter for the trier of fact when determining issues pertaining to property division. Babka v. Babka (1992), 83 Ohio App.3d 428, 436.
Lisa claims that she and Chris bought the house for $30,000. She presented testimony at trial stating that she and Chris documented the sale price as $30,000 to First Federal Savings Bank. She also stated that she and Chris reported to the County Recorder's Office that the sale price was $30,000. Additionally, testimony from Joseph indicated that he never reported to the IRS any gift of inheritance which he associated with the sale of the house. Lisa insists that all of these statements support her claim that the house was sold for $30,000.
However, other testimony and evidence introduced at trial indicated that the property was sold to Chris and Lisa for $75,000. It was undisputed that Chris and Lisa paid Joseph $30,000. Joseph explained that $25,000 was a gift to Chris. Therefore, according to Joseph and Chris, Chris and Lisa still owed him $20,000. Joseph offered a note for $20,000 as evidence of the money still owing on the house. Joseph explained that he has three children and he and his wife wanted to give each of the three children a $25,000 gift. He sold the house to Chris for $75,000, $25,000 was a gift. This left $50,000 to be paid on the house. The $50,000 Joseph received from the house would be divided between the other two children, each of them receiving a gift of $25,000. Also testimony indicated that Chris and Lisa executed a mortgage on the house for $65,000. Lisa's expert testified that a bank loan of $65,000 on the marital home lead her to believe the property was worth more than $30,000.
Evidence was presented in support of both figures as being the sale price. The trial court's holding regarding this issue was not an abuse of discretion. The trial court was in the best position to determine the credibility of the testimony. Enough evidence was presented to support the trial court's conclusion that the house was sold to Chris and Lisa for $75,000. This assignment of error is without merit.
 ASSIGNMENT OF ERROR NO. TWO
Lisa's second assignment of error contends:
 "ASSUMING, AD ARGUENDO, THAT THE SALE PRICE OF THE HOME IS $75,000, THE TRIAL COURT ERRED IN HOLDING THAT THE GIFT SOLELY TO CHRIS KAINRAD FROM HIS PARENTS CONVEYED AT THE TIME OF THE PURCHASE OF THE HOME SHOULD BENEFIT CHRIS KAINRAD, ALONE, AND BE DETERMINED HIS SEPARATE PROPERTY WHILE SIMULTANEOUSLY HOLDING THAT THE DEBT IN CHRIS KAINRAD'S NAME, ALONE, OWED TO HIS PARENTS ARISING OUT OF THE SAME PURCHASE OF THE HOME SHOULD BE CONVERTED INTO MARITAL DEBT FOR WHICH BOTH LISA KAINRAD AND CHRIS KAINRAD ARE RESPONSIBLE IS CONTRARY TO THE ESTABLISHED CASE LAW OF RAPOSE V. RAPOSE, 95 LW 2929 (Eleventh Dist., 1995)."
The trial court did not abuse its discretion by holding the $20,000 note executed solely by Chris for the remaining amount due on the house was marital property and the gift of $25,000 to Chris from his parents was a gift solely to Chris. In regards to the $25,000 gift to Chris, R.C. 3105.171(A)(6)(a)(vii) states that a gift of real or personal property made after marriage can be deemed separate property if proven by clear and convincing evidence to have been given to only one spouse. Joseph and Chris both stated that this gift was only given to Chris. Joseph explained that he and his wife wanted to give $25,000 to each of their three children that year. They did give $15,000 to each of the other two children, but the remaining $10,000 to each child would come from the $20,000 that Chris and Lisa still owed to Joseph. Lisa stated she knew nothing of a gift. It was not unreasonable for the trial court to conclude that Chris proved by clear and convincing evidence that the gift was only given to him.
Even though the gift of $25,000 was the sole property of Chris, the trial court was not unreasonable in its determination that the $20,000 note was marital debt. While the $20,000 note was executed only by Chris, Lisa actively participated in the first mortgage. In the first mortgage, Chris and Lisa borrowed $65,000. Lisa's own expert states that the bank would not have loaned them $65,000 if the property was worth $30,000. The house was considered to be marital property and the debt accumulated to purchase that house was considered to be marital property. See Leathem v. Leathem (1994), 94 Ohio App.3d 470, 473 (holding of title to property by one spouse individually, does not determine whether the property is separate or marital property).
Lisa insists that this court should follow the decision in Rapose v.Rapose (Mar. 24, 1995), Ashtabula App. No. 93-A-1768. In Rapose, the wife bought the house prior to marriage and secured a loan from her father to purchase the house. The wife's name only appeared on the deed and the mortgage, the husband did not participate in or know anything about the mortgage. The wife never told the husband about the loan from the father. In Rapose, the court stated that R.C. 3105.171 supported the trial court's determination that the $20,000 down payment and accompanying debt were the wife's separate property since they were acquired prior to marriage. Id. Rapose is factually distinguishable from the case at hand. First, the house and the loan were not secured prior to marriage. Additionally, Lisa participated in and her name was on the mortgage. The trial court was not unreasonable in its determination that the $20,000 note was marital property.
 ASSIGNMENT OF ERROR NO. THREE AND CROSS-ASSIGNMENT OF ERROR NO. ONE
Lisa's third assignment of error and Chris' first cross-assignment of error are similar, therefore they will be addressed together. These assignments contend:
 "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION, RULED AGAINST THE MAINFEST [SIC] WEIGHT OF THE EVIDENCE WHEN IT FOUND THAT $31,681.00 WAS OWED AS A MARITAL DEBT ON THE EXCAVATION EQUIPMENT WHEN THAT FIGURE EXPRESSLY FAILED TO TAKE INTO ACCOUNT THE VALUE OF THE DUMP TRUCK AND TRAILER AND FAILED TO ASSESS DAMAGES IN ACCORDANCE WITH O.R.C. § 1310.69, O.R.C. § 1310.73 AND O.R.C. § 1310.50."
 "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT ORDERED APPELLEE-CROSS APPELLANT TO ASSUME AND BE RESPONSIBLE FOR THE MARITAL DEBT DUE AND OWING TO JOSEPH R. KAINRAD IN THE AMOUNT OF THIRTY ONE THOUSAND SIX HUNDRED EIGHTY ONE AND 00/100 DOLLARS ($31,681.00)."
Three disputes are raised under these assignments of error. First, whether the trial court properly calculated the amount owing on the backhoe and dozer. Second, whether the trial court failed to take into consideration the value of the trailer and dump truck in determining the debt. Finally, whether the trial court properly concluded that this was marital debt offset by the improvements made to the marital home by Lisa's father and brother. This final determination results in Chris being solely responsible for paying off the equipment debt.
 A. VALUATION OF THE PROPERTY
Joseph testified that he purchased the dozer and backhoe for Chris at a combined purchase price of $34,471. The cost of the backhoe was $19,471 and the cost of the dozer was $15,000. Joseph and Chris entered into a capital lease or installment purchase agreement where Joseph would charge Chris $20 an hour to use this equipment and once Chris had paid the purchase price, the equipment would be his. State ex rel. Celebrezze v.Tele-Communications (1990), 62 Ohio Misc.2d 405, 422.
Joseph insists that the amount of money owed on the equipment is equal to the purchase price of the combined equipment minus any rental payments made by Chris and Lisa. The purchase price of the equipment was $34,471. Chris and Lisa paid a total of $2,450 in rental payments on both pieces of equipment. Therefore, according to Joseph, the amount owing on the equipment would be $32,021. However, Joseph's calculation is incorrect. In a contract, the parties are bound by the provisions in that contract.Master Lease of Ohio, Inc. v. Andrews (1984), 20 Ohio App.3d 217, 219. Joseph testified that the maximum amount owed would be $19,471 on the backhoe and $15,000 on the dozer. Chris rented the backhoe for 1,984 hours. Multiplying those hours by the $20 per hour, the rental price of this equipment would be $39,680 which would greatly exceed the purchase price of $19,471. The trial court, however, found that Joseph was entitled to the purchase price on the backhoe minus any rental payments being owed.
Shifting now to the dozer, we note that Chris rented the dozer for 733 hours. At $20 an hour, the rental price of this equipment was $14,660. The purchase price of the dozer ($15,000) was not reached. As such, Chris only owed the amount of rent due on the dozer minus any rental payments. Therefore, the debt owing on the equipment is $31,681 ($19,471, the purchase price of the backhoe, plus $14,660, the rental price of the dozer, minus $2,450, combined rental payments made on the dozer and backhoe). Despite Joseph's claim that the amount owing on the property is $32,021 instead of $31,681, collecting the $32,021 would be allowing Joseph to collect a windfall since Chris did not rent the dozer for the full amount of the purchase price. See Cain v. Brown (1922),105 Ohio St. 264 (a lessor cannot oust the lessee and demand future payment). Moreover, Joseph really cannot complain since he also gets to keep the salvage and/or resale value of the equipment. Since neither party presented any evidence as to that value, we do not find error of the trial court to deduct that value from the outstanding balance. In conclusion, we hold that, the trial court did not abuse its discretion in determining the amount owing on the equipment is $31,681.
Lisa insists that the trial court should have, in addition to the rental payments, subtracted the value of the backhoe and dozer when it was returned, and the value of other equipment, trailer and dump truck, owed solely by the excavation business from the amount owing on the backhoe and dozer. Lisa insists that the value of the equipment upon repossession and the value of the additional excavation equipment amounted to $26,700. However, testimony at trial never clearly indicated what the price of the repossessed equipment would have been when it was returned. Joseph guessed that it was worth $1,000, but he did not have it appraised. Lisa had the equipment appraised after repairs were made to the equipment. The equipment was appraised at $11,500. The trial court refused to apply either evaluation. At common law, a lessor usually has a duty to mitigate his damages. Andrews, 20 Ohio App.3d at 220 (stating that typically in car leasing contracts there is a duty to mitigate unless the contract specifies otherwise). If Joseph were to mitigate his losses, it is unclear how much he would receive. He could maybe receive $1,000, which appeared to be a rough estimate. But it is clear that upon repossession he would not have received the appraised value at $11,500, which was done after approximately $11,000 in repairs were made. The trial court was not unreasonable by failing to subtract the $1,000 estimate or the $11,500 appraisal after repairs.
 B. TRAILER AND DUMP TRUCK
The trailer and dump truck were owned outright by the excavation company. Chris and Joseph claim that Joseph has no authority to make Chris sell the property to repay the debt of the equipment.
A trial court is permitted to order the sale of any real or personal property and order the proceeds from the sale to be applied as the court determines. R.C. 3105.171(J)(2) (stating that the court may order the sale if it deems the sale would be equitable); Gills v. Gills (Dec. 23, 1994), Lake App. Nos. 93-L-191, 93-L-194. The court order does not state who will have the right to the trailer and dump truck. The trial court left the division of the personal property to the parties. While the trial court could have ordered the sale of the dump truck and the trailer, it was not an abuse of discretion for the trial court to refrain from ordering that sale.
 C. EXCAVATION EQUIPMENT MARTIAL DEBT PAID BY CHRIS
The trial court held that the excavation equipment debt was marital debt to be paid by Chris due to the testimony of Lisa's brother that he and his father expended anywhere from $30,000 to $75,000 in cost to remodel the marital home. Lisa claims that requiring Chris to pay this debt was not an abuse of discretion. However, the trial court should have ordered him to pay more since the remodeling was worth more than the equipment debt.
The trial court took into consideration the debt of the excavation equipment which was marital debt and the remodeling on the marital home, which also was marital debt. There was some testimony that Lisa's brother borrowed Chris' excavation equipment. They more or less had a "I do something for you, you do something for me" deal. However, there was no testimony to indicate the dollar amount that borrowing the equipment was worth. There was testimony that Lisa's father and brother paid for the raw materials used to remodel the house.
Given the debt owed on the excavation equipment ($31,681) and the remodeling job ($30,000-$75,000), it does not appear that the trial court was unreasonable in this determination. The price of the equipment was offset by the price of remodeling and the borrowing of the excavation equipment. Furthermore, the trial court did not act unreasonably when it did not order Chris to pay more due to the possible price difference between the remodeling job and the amount owing on the equipment. The trial court did not abuse its discretion.
 ASSIGNMENT OF ERROR NO. FOUR
Lisa's fourth assignment of error contends:
 "ASSUMING AD ARGUENDO THAT THE SALE PRICE WAS $75,000, THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT FAILED TO REDUCE FROM THE AMOUNT OWED TO JUDGE KAINRAD, THE AMOUNT OF THE SELLER'S FIRST MORTGAGE PAID BY LISA KAINRAD AND CHRIS KAINRAD OF $2,592.56 AT THE TIME OF THE CLOSING."
When Chris and Lisa bought the house from Joseph, $2,592.56 was remaining on Joseph's mortgage on that property. Chris and Lisa paid off that mortgage at the time of closing. Joseph testified that these facts occurred. However, the amount paid off on seller's mortgage was not subtracted from the amount owing to Joseph. In 1999, Joseph combined all notes into one note and Chris signed this note. By signing this note, the parties accepted the balance owing on the final note, which did not reflect the payment of Joseph's mortgage. Therefore, the trial court did not abuse its discretion by failing to deduct the $2,592.56.
 ASSIGNMENT OF ERROR NO. FIVE
Lisa's fifth assignment of error contends:
 "THE TRIAL COURT ERRED AN ABUSED ITS DISCRETION WHEN IT DETERMINED THAT $1500 INITIALLY PAID TO MAUREEN FREDERICK FOR TAXES BY JUDGE KAINRAD AND LATER PAID BY CHRIS KAINRAD WAS DEBT STILL OWED TO JUDGE KAINRAD."
Paragraph sixteen in the journal entry states that Chris and Lisa owe $1,500 to Joseph for a loan that he made to them to pay back the taxes on the property. However, at trial Joseph testified that Chris and Lisa already paid him back for this amount. Therefore, it was an abuse of discretion for the trial court to order Chris and Lisa to pay this amount to Joseph. The decision of the trial court in regard to this matter is modified. Paragraph sixteen in the journal entry is modified to state that Chris and Lisa have already paid $1,500 to Joseph for this debt and no balance is owing for this amount.
Joseph claims that Lisa waived her right to appeal in this matter because she took advantage of the court order of the first option to purchase the property. However, Lisa, previous to trying to exercise the first option to purchase, requested the court stay the time period in which she had for the first option so that the appeal would not be moot. The court denied the request. Therefore, Lisa did the only thing she could to protect her rights. Furthermore, she was unable to purchase the property.
 CROSS-ASSIGNMENT OF ERROR NO. TWO
Chris' second cross assignment of error contends:
 "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN NOT AWARDING APPELLEE-CROSS APPELLANT THE APPRECIATED VALUE OF HIS ADVANCE ON INHERITANCE OR GIFT FROM HIS PARENTS."
R.C. 3105.171(A)(3)(a)(iii) states that all income and appreciation on separate property due to the labor, monetary or in kind contribution of either or both of the spouses that occurs during the marriage is marital property. At the time of the sale of the property from Joseph to Chris and Lisa, Chris received a gift of $25,000, one third the purchase price of the house. The gift was separate property, but it was invested in the purchase of the house. See Assignment of Error No. Two. During the marriage the house appreciated in value from $75,000 to $165,000. The house appreciated in value due to the extensive remodeling that Lisa's father and brother did on the house. As explained in Assignment of Error No. Three, the cost of remodeling was a marital debt that was offset by the debt on the excavation equipment. Chris' separate property of $25,000 appreciated in value to $55,000. However, the appreciation in Chris' separate property is marital property since the appreciation largely was the result of the efforts of one or both of the parties during marital coverture, and not merely a passive appreciation. See Middendorf v.Middendorf (1998), 82 Ohio St.3d 397 (holding that an increase in the value of separate property due to either spouses effort's is marital property); R.C. 3105.171. Therefore, according to Middendorf and R.C.3105.171, Lisa has a right to the appreciated value, due to her and Chris' monetary, labor, or in kind contribution to the appreciation in Chris' separate property. This assignment of error is without merit.
For the foregoing reasons, the judgment of the trial court is hereby modified in part and affirmed. Paragraph sixteen of the journal entry is modified to state that the balance owed to Joseph on the $1,500 in taxes is zero.
Donofrio, J., concurs.
Waite, J., concurs.